RUTLEDGE v. STROH COMPANIES

[105 N.C. App. 307 (1992)]

———————

JACKIE C. RUTLEDGE, PLAINTIFF EMPLOYEE v. STROH COMPANIES, DEFENDANT EMPLOYER AND STANDARD FIRE INSURANCE COMPANY, CARRIER; DEFENDANT(S)

No. 9110IC298

(Filed 4 February 1992)

Master and Servant § 91 (NCI3d) — workers' compensation — time for filing claim — wage earning capability

The Industrial Commission erred in a workers' compensation action by dismissing plaintiff's claim, filed on 7 April 1988, as barred by the statute of limitations in N.C.G.S. § 97-58(c). Although plaintiff's respiratory difficulties began in 1977 and his doctor notified defendant in 1982 that plaintiff was allergic to chemical contaminants when he worked in the canning line, plaintiff was not forced to stop work of any kind because of hyperreactive airways disease until he became seriously

RUTLEDGE v. STROH COMPANIES

[105 N.C. App. 307 (1992)]

ill in January and February 1988. Since plaintiff was still capable of earning the wages he had received in the past, albeit in a different environment, plaintiff was not incapable of earning the wages he had received at the time of the onset of his illness and therefore the running of the statute of limitations was not triggered.

**Am Jur 2d, Workmen's Compensation §§ 482, 486, 487, 491.**

APPEAL by plaintiff from the North Carolina Industrial Commission. Opinion and Award entered 9 January 1991. Heard in the Court of Appeals 13 January 1992.

This is a civil action wherein plaintiff is seeking benefits pursuant to the Worker's Compensation Act. The facts are summarized as follows: Plaintiff was employed for fourteen years at the Stroh Container Division of Stroh Brewery in Winston-Salem, North Carolina. Plaintiff's duties included rebuilding and repairing machinery with noxious chemical solvents which gave off strong fumes. Evidence shows that beginning in 1977, plaintiff was admitted to the emergency room at Forsyth Memorial Hospital on several occasions for respiratory difficulties. Plaintiff sought treatment from his family doctor, who referred him to Dr. William McCall, Jr., a specialist in internal medicine and allergen immunology.

On 1 September 1982, Dr. McCall wrote Jerry Hodges, an assistant industrial relations manager, regarding plaintiff's condition. The letter explained that McCall saw plaintiff on 26 August 1982 for a recurrence of his previous acute bronchospasm secondary to chemical exposures on the job. The letter advised that plaintiff was allergic to chemical contaminants when he worked in the canning line and was exposed to lacquer sprays and varnish. McCall indicated that plaintiff could not safely work in that area and recommended that he be kept out of that area.

Defendant Stroh responded by providing plaintiff a work area away from the canning line; however, absenteeism and employee shortages caused defendant to return plaintiff to the canning line. As a result, plaintiff's respiratory difficulties recurred from time to time, requiring further emergency room treatment and/or hospitalization. Plaintiff's breathing problems substantially worsened during January and February 1988.

**RUTLEDGE v. STROH COMPANIES**

[105 N.C. App. 307 (1992)]

On 7 April 1988, plaintiff filed a Form 18 seeking worker's compensation benefits alleging permanent and total disability as a result of an occupational disease. Thereafter, plaintiff was fired by defendant on 25 April 1988. The termination letter indicates plaintiff's "high sensitivity to chemicals" as the reason for his termination.

On 12 July 1989, Dr. McCall stated that plaintiff suffers from "hyperreactive airways disease," a condition in which the airway, or bronchial tube, is extremely sensitive to the environment. McCall explained that plaintiff was at an increased risk of developing an allergy or hypersensitivity compared with the general public because of his exposure to chemicals in the workplace. Furthermore, McCall expressed his opinion that plaintiff's history of chemical exposure at defendant's brewery was a significant factor contributing to his hyperreactive airways disease and the symptomatology that he had experienced since 1977.

Plaintiff's claim was heard before Deputy Commissioner Tamara R. Nance who entered an Opinion and Award denying plaintiff's claim based on the following conclusions of law:

1. Plaintiff did not and does not suffer from an occupational disease within the meaning of the Workers' Compensation Act. G.S. 97-53(13). Plaintiff's employment with defendant-employer did not place him at an increased risk of developing hyperreactive airways disease, nor was his employment a significant contributing factor to the development of the breathing problems he experienced while he was employed with defendant-employer. Plaintiff did not have unusual levels of airway reactivity and there is no documentation that he was actually allergic to anything at the Container Plant.

2. Assuming, *arguendo*, that plaintiff did suffer from an occupational disease within the meaning of the Workers' Compensation Act, plaintiff's claim for benefits is barred by G.S. 97-58(c), because he failed to file his claim within two years of disability when at the time of disability he had been advised by competent medical authority of the nature of and work-related cause of his disease. *Dowdy v. Fieldcrest Mills*, 308 N.C. 701 (1983).

Plaintiff appealed the decision of the Deputy Commissioner to the Full Commission.

RUTLEDGE v. STROH COMPANIES

[105 N.C. App. 307 (1992)]

On appeal the Full Commission made findings of fact and conclusions of law only with respect to whether plaintiff's claim was time-barred by the statute of limitations, and entered an order dismissing plaintiff's claim pursuant to G.S. 97-58. Plaintiff appealed.

*Lore & McClearen, by R. Edwin McClearen, for plaintiff, appellant.*

*Womble Carlyle Sandridge & Rice, by Clayton M. Custer, for defendants, appellees.*

HEDRICK, Chief Judge.

Plaintiff's sole assignment of error is the Industrial Commission erred in denying plaintiff's claim on the grounds that it was barred by the statute of limitations in G.S. 97-58(c). Plaintiff argues he filed his claim within two years of receiving notice of the nature and work-related cause of the disease. Furthermore, plaintiff contends that even if he had been put on notice of his disease more than two years prior to filing his claim, the additional requirement of "disability" had not been met at that time, and therefore, the statute of limitations has not run.

G.S. 97-58 provides in pertinent part:

(b) . . . The time of notice of an occupational disease shall run from the date that the employee has been advised by competent medical authority that he has the same.

(c) The right to compensation for occupational disease shall be barred unless a claim be filed with the Industrial Commission within two years after death, disability, or disablement as the case may be . . . .

In interpreting this statute, this Court found that two conditions must be met in order to start the two-year statute of limitations running against a claimant: (1) The employee must have suffered an occupational disease which renders the employee incapable of earning, at any job, the wages the employee was receiving at the time of the incapacity, and (2) the employee has been informed by competent medical authority of the nature and work-related cause of the disease. *Underwood v. Cone Mills,* 78 N.C. App. 155, 336 S.E.2d 634, *disc. review denied,* 316 N.C. 202 (1985).

In *Underwood,* plaintiff began experiencing breathing problems which gradually worsened over the course of several years. Plaintiff

saw a doctor in 1980, who informed plaintiff that he had chronic bronchitis, respiratory infection and allergies, and these conditions were possibly aggravated by plaintiff's exposure to cotton dust at work. Plaintiff was given a job in a different area where dust was less prevalent, but again experienced difficulties and was diagnosed as having chronic obstructive pulmonary disease in March 1981. The Industrial Commission awarded lifetime benefits, and defendant appealed on the grounds the claim was time-barred by G.S. 97-58. This Court applied the two part test set out above, and found plaintiff did not become disabled until he was forced to stop work of any kind because of his occupational disease, and since he was able to earn the wages he had always received until that date, the arguments about when plaintiff was first informed of the nature and work-related cause of his disease became irrelevant. *Id.*, 336 S.E.2d 364.

Similarly, in the present case, plaintiff was not forced to stop work of any kind because of "hyperreactive airways disease," until he became seriously ill in January and February 1988. Since plaintiff was still capable of earning the wages he had received in the past, albeit in a different environment such as when Stroh transferred him off the canning line, plaintiff was not incapable of earning the wages he had received at the time of the onset of his illness, and therefore the running of the statute of limitations was not triggered. As in *Underwood*, we need not address the question of the date on which plaintiff was informed by competent medical authority of the nature and work-related cause of his disease.

The Industrial Commission clearly dismissed plaintiff's claim on jurisdictional grounds and did not reach the merits of plaintiff's claim. The question of whether plaintiff suffers from an occupational disease is still before the Commission. Our decision today, reversing the ruling of the Commission with respect to jurisdiction means that the Commission must rule on plaintiff's claim on the merits, and for that purpose, the cause will be remanded to the Industrial Commission.

Reversed and remanded.

Judges WELLS and JOHNSON concur.